Morning, Your Honors. Good morning. I'm James Keenly. I represent the plaintiff Robert Meakin in this case. The district court's judgment below should be overturned and judgment should be issued to Mr. Meakin in this case for the very straightforward reason that if you apply the written terms of the plan to Mr. Meakin's pension, he should have received it in 2008 when he retired and he should still be receiving it today. The board's efforts to terminate the pension or to suspend it, rather, six years after they had approved its payment were based on an incorrect assumption about the law and the facts and lack any legal merit and conflict with the plan terms. This is actually consistent with the district court's findings. The district court did find it was undisputed that Mr. Meakin had vested and accrued in his Golden 85 pension and also that the board had approved his application to work in the building and construction trades while he was paid the pension. Those two findings alone should have resulted in judgment for Mr. Meakin. Let me ask you, under your view, does it mean that the plan would never have the benefit? Not as applied to Mr. Meakin's benefit. It's one thing to reinterpret the plan on a forward-going basis. That's something that happened in the case before the Ninth Circuit called Oster, which is cited in the party's briefs. Though I will clarify that in Oster, that plan was always written such that the benefit at issue was an optional benefit. It was an option for the plan administrator to distribute it as a lump sum, and for 30-some-odd years they had done that, and then they abruptly changed policy, and this Court held that it was okay to change policy forward-going on a forward-going basis. It would not be okay to reinterpret the plan in a manner that conflicts with the plan's express written terms, which is what this Court has repeatedly held in Soffel and Canseco and in other cases. By forward-going, you mean they can't change it as to your client, but they can change it to somebody else in the shoes of your client in the future? Potentially. And, in fact, I believe the plan in this case was amended to deal with the forward-going problem to change their practices. But what then is the impact when a company receives notice from the IRS with respect to application of this retirement point, and then the question is whether both the IRS and ERISA require a clear severance before going on? Certainly. It seems that maybe you can work this into your answer. The plan, of course, has fiduciary duty not just to your client, but to everybody, and so that's a pretty big red flag for the plan, so I'd appreciate you addressing that. Certainly. So, first, as an initial matter, the IRS didn't come to the plan here. The plan went to the IRS and reported these compliance failures voluntarily. This wasn't a situation where they were being threatened in any way. And the IRS, in responding to that, did issue a letter saying, if you do the changes that you suggested you would do, we will not disqualify your plan. But the IRS also stated expressly in that letter, this doesn't affect any participants right under Title I of ERISA to enforce the terms of the plan. And the fact of the matter is, if there was an actual qualification failure, and there really is not here, and I'll get into that, the IRS doesn't have the authority to nullify the plan terms. The plan terms would still be enforceable, even in a non-qualified plan. And there are many non-qualified plans out there. It would be very bad for this plan were it to be found to be non-qualified, although there's literally no example of that ever happening to any plan of this size in the entire history of the statute. So I think that's a very remote risk. As to whether it is an actual compliance failure in Mr. Meekin's case, it clearly is not, because he separated from covered employment on July 31, 2008, and he never returned. So from the plan's perspective, he's retired. Roberts. He returned the next day, I thought. He returned to work. He did not return to service on covered employment under the plan, ever. So that's very different. This is a plan that is sponsored by a labor union and a joint board of trustees that consists of labor and management representatives. His employer doesn't sponsor this pension plan. It's one of many participating employers. And when he retired from service on July 31, 2008, he never came back. He doesn't work under the CBA anymore. He doesn't accrue benefits under this trust anymore, and never has. He hasn't got a single additional hour. So when we're looking at plans, there's a general requirement in law that pension plans be designed to distribute benefits after retirement. We have to look at what it means to retire. And in the context of a pension plan, when you retire is when you retire from the work that is giving you the benefit that the plan provides. It's not ceasing all exchange of labor for money. So there's no compliance failure here. There's no in-service distribution here, which is not a legal term anyway. It's a term of art. We worry that benefits are being paid after or before Mr. Meekin retired with respect to the plan. So what he's retiring from, in your view, is the in-service as defined by the plan while he was covered by it. Exactly. So the plan is a definition of what constitutes covered employment. And his last day of covered employment was July 31, 2008. And then he started working in non-covered employment August 1, 2008. This would be no different than if he had worked outside of his employer. Like if he had gone to work for Walmart or something like that, this would be the same situation. He has retired from the service that got him the pension benefit in the first place, and he's not gaining any additional service while working. But, counsel, is it your position that the trustees or the plan abused its discretion when it reinterpreted the plan and applied it to your client? Yes, that's correct. It was an abuse of discretion to impose these requirements on Mr. Meekin after the fact. And why was that an abuse of discretion? Because he satisfied all of the written requirements of the plan terms when he retired, and he could not know about these new requirements that were being imposed in 2014. In fact, not even the board knew. When Mr. Meekin retired in 2008, this was the board's settled practice. And everyone, they operated the plan this way intentionally. It wasn't like a big mistake. In Mr. Meekin's case, it was what they are calling an operational error across the plan. Now, we contest that it was an error at all, but that's more for the board to decide. As a matter of arista jurisprudence, you can't then go back and say, oh, we are going to add new requirements to this plan and apply them retroactively and suspend your benefit. What exactly did your client lose when this plan was reinterpreted and then applied to him? They didn't seek recovery of the benefits he already received, did they? Not yet. He lost ongoing payment of his pension. The pensions that was paid to him between August 2008 and April 2014 was deemed an overpayment. They have not attempted to collect the overpayment from him. But this plan was designed, I mean, he lost a valuable benefit, which is a monthly pension of several thousand dollars. And this plan was designed explicitly to allow workers to accrue an early subsidized pension like he did, and then to retire, and then to work, if they chose, in very narrow categories in the building and construction trades, if they got approval from the board, which he did. And they're now taking that away, and it's a substantial portion of his monthly income that they've taken away for several years. The other thing that I wanted to address just briefly before reserving the balance of my time is that there are several novel arguments raised for denying Mr. Meekin's pension in the litigation that were not a part of this IRS proceeding at all. And that's one, the advanced application requirement in the pension plan for Mr. Meekin's work, and this argument that he was not a pensioneer within the meaning of the plan at the time he applied for this approval to do this work. Our position is that these arguments are waived. They weren't raised at any point during the claim and appeals process, and they're totally disconnected from what the IRS proceeding was concerned with. And also that, you know, that's consistent with this court's precedence in Harlech and in Salyers. And more broadly, on the question of pensioneer, we addressed this in our briefs. It's clear that Mr. Meekin was a pensioneer within the meaning of the plan as of August 1, 2008, when he started work. One day later? The result should not be different if he started work one day later. No. Would there be any question, then? Well, I think the plan's position would be the same, that he needed to be the plan's position is he needed need to be either under age 62 or out of work for three months, which is nowhere in the plan. Very specific requirement. That is not something Mr. Meekin could establish because he the facts were the facts. So I don't think that one day would make a difference to either party's position in the case. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. Catherine McDonough for the Appellee Pension Fund. I wanted to first address Mr. Meekin's position about the trustees reinterpreting the plan and his position that the plan added a new term for eligibility. I would respectfully submit that that's not what happened here because the preamble of the plan says that the plan is tax qualified and that it's to be interpreted and applied consistent with that intent. And courts that have looked at language like that, this court in the Viscano v. Microsoft case and the Tenth Circuit and the Crouch case have said that that's a substantive term of the plan that governs employee eligibility. So the requirement that Mr. Meekin separate from employment was always present in the plan. So the trustees, when they stopped his pension, weren't applying a new eligibility criteria. They were just enforcing language that was there in the plan. And I would submit as fiduciaries, when they find this type of tax qualification error, they have to take action to correct it. And that's consistent with the IRS's procedures. At the time, Revenue Ruling 2008-50 was in place. And that Revenue Ruling basically said, you know, if the trustees find an operational error, they find a tax qualification issue, they can't just ignore it. They have to take action to correct it. And so they did not abuse their discretion because they were relying on that term in the preamble. And then the second, and also I think the district court was right, that under the court's decision in Gilliam v. Nevada Power, that courts look to interpretations that give effect to the entire plan. And interpretations that ignore a provision of the plan, that render a provision of the plan nugatory, are to be avoided. And that was an additional reason for upholding the trustees' decisions, because they were giving effect to the preamble. Otherwise, if they had upheld Mr. Meekin's position, they would have been rendering it nugatory. The other item that I wanted to address was the issue of covered employment versus non-covered employment. Mr. Meekin makes the argument that he somehow separated from service because he moved from covered employment to non-covered employment. But if you look at the language of the IRS in their rulings, it's much broader than that. And in fact, the requirement to separate from service as an early retiree has been present in the tax code since before ERISA was even enacted. The district court cited IRS Ruling 71-437, and that talks about a severance of employment being required for distributions of employers' contributions or increments thereon being given to the employee. So that talks about a severance of employment, a severance of employment. Again... Well, if this is so obvious, it apparently wasn't at the time he moved from his full-time employment to retirement and then on to a new status. It wasn't that apparent, apparently. I think what caused the trustees' concern was the private letter ruling that was issued in 2011 that we cite in our briefs. And that was a multi-employer plan like this one. And Mr. Meekin will say that that private letter ruling did not involve a switch from covered employment to non-covered employment. But I think we have to look at the actual language that the IRS used. And the language that they used was, cease performing services for the employer. Cease performing services for the employer. And that's a broad statement. And there's no dispute here that Mr. Meekin never ceased performing services for the employer. He worked as a superintendent until July 31st, 2008. And then the very next day, August 1st, 2008, he started working as a safety officer. So that broad language really gave the trustees concern. And I think their decision was reasonable given that language. In our brief, we also cite IRS Notice 2007-69. And I think that's really applicable here and important to look at because that talks about a service pension. And the language we quote in our brief, and a service pension is what Mr. Meekin received. A service pension is based on the years of service. His was based on a combination of service and age. But if you look at the language that they used there in talking about a service pension, they say an early retirement benefit is generally and only permitted to commence with an annuity starting date. An annuity starting date is basically when you commence your pension. That is after the severance of employment, except to the extent permitted under 401A-36 of the code. And so, again, there's that language severance of employment. And 401A-36 basically says that in-service distributions are permitted after age 62. So if you look at the totality of the guidance that's available from the IRS, they're talking in terms of ceasing performing services and they're talking in terms of severancing employment. And so given that guidance, the trustees were reasonable here. And I'll also note that the trustees didn't just stop Mr. Meekin's pension. Before they did that, they did what they were supposed to do. They followed the revenue procedure in effect at that time, 2008-50, and they brought what they thought was a tax qualification error to the IRS's attention. And they worked with the IRS and they came up with this correction. So that was another point where they knew the IRS was agreeing with their interpretation, and another reason why they were not abusing their discretion. Mr. Kinley said in response to a question that the plan at this point had not gone back to recoup the payments already made. Is that correct? Yes, Your Honor, that is correct. So in the voluntary correction procedure, they addressed the overpayment to Mr. Meekin, and they basically had the bargaining parties pay those overpayments. So the plan's not seeking any overpayment from Mr. Meekin. Exactly. And so Mr. Meekin will retain the payments already made? He will, yes. Well, and just to follow that line then, once he reaches the appropriate age, he'll be able to get benefits again but just under a different provision of the plan. Is that correct? And maybe he's already reached that age. I don't know. Correct, Your Honor. So the voluntary compliance procedure, when we had that approved, basically we agreed that he would be paid the earlier of a true severance of employment or age 62, which is in compliance with 401A-36. And what's his status now? I believe he's still working, and I could be wrong, but I don't think he's reached age 62 yet. Okay. The other point we'd like to make, I don't know that Mr. Meekin addressed it here today, but I just wanted to address it. He brings forth an equitable estoppel theory, and this Court has been very clear that in the ERISA context, you have to allege extraordinary circumstances, and there's no evidence of anything like that, and the district court noted that in their opinion. There was no evidence of repeated misrepresentations or seeking to profit off of Mr. Meekin or that Mr. Meekin was particularly vulnerable. And I also wanted to just quickly address an additional defense that we brought forward in the district court. If you look at the language of Article 8, Section 8A-4, it says very clearly that to work in a safety officer position and receive your pension, you have to apply in advance and receive permission in advance, and Mr. Meekin did not in this circumstance. The response to that, that is the requirement, of course, but the response is that that was not raised before as a reason. Right, and I think it's an eligibility term to receive your pension, and I'm not sure that the trustees can waive an eligibility term, especially on a motion for summary judgment. I think for Mr. Meekin to prevail, he'd have to show that he met every eligibility term. And so the district court didn't reach that defense. That's in Note 4 of their decision, but we would just respectfully request that if this court were to overturn the summary judgment determination, that that issue be addressed on remand. And finally, I'd just like to note that Mr. Meekin concedes that the abusive discretion standard applies to the interpretation of the plan, but there was some discussion in his brief about how interpretations of the law should, what standard they should fall under. And I would respectfully submit that the trustees, to some extent, were not interpreting the law here because they didn't just stop Mr. Meekin's pension. They went to the IRS first, and the IRS looked at what they had submitted, that they were, looked at how the trustees had described the law, and the IRS actually agreed with them. So I don't think the trustees were actually interpreting the law because they looked to the IRS to do that. But I also would say that I believe the trustees in making this decision were really interpreting the plan because it's the preamble that says that there's a tax, the plan has to be tax qualified and should be applied and interpreted consistent with that intent. And Gilliam, I think, says that you sometimes have to look outside the four corners of the plan, that you have to look at the context that included the language in the plan. But just because they had to look outside the four corners of the plan, I believe they were still interpreting the plan and specifically the preamble, and so that their decision here should be under the abuse of discretion standard. In absence of any other further questions, we would just request that the district court's decision be upheld. Thank you. Thank you. Thank you, Your Honors. The first argument I want to turn back to is the issue of waiver and whether you can waive an eligibility requirement, as counsel put it. You absolutely can. This Court addressed this matter in Salyers, which is a case cited in the briefs in the context of life insurance, where a life insurance carrier to a group benefit plan required a statement of health as a precondition of granting coverage. It then accepted employees' coverage without actually requiring the statement of health and took the employees' premiums for many years. And when the employee came time to collect on the life insurance benefits, the carrier attempted to deny on the grounds that they had not met this basic eligibility requirement at the outset. And this Court held that that defense was waived, because the life carrier had induced the plan participant's reliance by accepting these premiums. They had waived that defense. Same thing happened here. Mr. Meekin did apply after he had started working. The Board knew that. All those facts were totally known to the Board at the time. They still approved this pension, and they approved it for six years, him relying on that income month to month before changing their mind. And even when they changed their mind, they didn't invoke this particular defense until the district court proceedings in this case. So I think that defense is thoroughly waived under multiple precedents. On the issue of IRS private letter rulings and notices and some of the loose language the IRS uses in these documents, it's important to understand that these sources of authority come from hypothetical presentations of facts by anonymous taxpayers. These are not situations where the issues have been fully argued and vetted before an adjudicative body of the IRS, and they're not supposed to be cited as precedential authority in what the law means. To the extent the IRS has said in some of these letters that a full separation from all employment is necessary to obtain a pension, the IRS is wrong in those letters. IRISA itself defines an employee pension benefit plan as one which defers benefits until after the employee has left covered employment. The statute uses that term, and so does this plan. And here the facts in Mr. Meekin's case are unambiguous. He unambiguously left covered employment on July 31, 2008, and has never returned. So there's no reason to be concerned about him. There's various policy concerns that underlie this idea that you should not retire and continue to accrue service in the pension plan you retired from. It's bad for plan funding and administration. It defeats the purpose of providing tax shelter for this income until the employee is retired. None of those problems are met here. He left the plan. He gave up the opportunity to accrue additional service in it. He gave up the opportunity to work under the CBA so that he could retire and get this benefit that he invested in. And it would fly in the face of Canseco and Soffel to allow the plan in this case to impose these very specific requirements by invoking the preamble. We don't contest that the preamble is part of the plan. It certainly is. But no ordinary person can read this broad statement of intent in the preamble and then deduce from that that Section 8A.4 of the plan has unwritten terms that are not there, that you must be over age 62 or that you must fully separate from all employment before you can get this benefit. You would need both highly sophisticated knowledge of the tax code and highly sophisticated insider knowledge of how this plan has worked to make any connection between the preamble and the specific language in Section 8A.4 of this plan that Mr. Meekin relied on when he retired. There's no authority in this Court or any other for allowing a preamble's broad statement to modify in a highly specific way other language in the plan that clearly entitles the participant to receive a pension benefit. That's all I have, Your Honor. Thank you. Thank you. Thank both counsel for arguments and also with your fluency with the RISA cases. We appreciate that. The case just argued is submitted and we're adjourned for the morning. All rise.
judges: McKeown, Gould, Bastian